# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MOZINE JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0621** |
| **BURL CAIN** | **SECTION "B"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    State Factual and Procedural Background

The petitioner, Mozine Johnson ("Johnson"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On April 8, 2005, Johnson was charged by bill of information in Jefferson Parish with four counts of armed robbery, which were the December 19, 2004, armed robbery of Greta Lewis (count one), the December 29, 2004, armed robbery of George

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

Friloux (count two), the December 31, 2004, armed robbery of Michelle Colbert (count three), and the January 8, 2005, armed robbery of Tina Bacon (count four).[3]

As to third and fourth counts, the record reflects that, on December 31, 2004, Michelle Colbert, was the manager at the Mr. Cash on the Westbank Expressway.[4]  About 30 minutes after she opened the store, a middle-aged African-American man wearing a navy blue suit entered the store and asked about a loan.  Colbert, who was the only employee in the store that day, explained the procedure and the man left to purportedly retrieve the necessary documents.  The same man returned about 45 minutes later, and recognizing him, Colbert immediately released the locked door for him to enter.

As Colbert turned to retrieve the necessary loan paperwork, the man pulled out a big silver gun, pointed the gun at her face, and demanded money.  In response to his demands to "give me the f***in' money," Colbert removed the entire cash drawer, which contained more than $720.00, and gave it to the man.  She was unable to reach the panic button under her desk before the man told her to "pick her hands up" or he would shoot her.

That day, Colbert described the man to police as a "black male, clean cut, dark complexion, a little taller than [her], medium build, and of middle age."  Lieutenant Daniel Johnson of the Westwego Police Department investigated the robbery and indicated that Colbert described the man as an "older black male" between "5'9", 5'11"" and "soft spoken."

---

[3]St. Rec. Vol. 1 of 6, Bill of Information, 4/8/05.  A new bill was filed on May 8, 2007.  St. Rec. Vol. 1 of 6, Bill of Information, 5/8/07.  The new bill was withdrawn and amendments were made to the original bill to correct typographical errors on June 11 and 12, 2007.  *Id.*

[4]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Johnson*, 9 So.3d 1084, 1087-89 (La. App. 5th Cir. 2009); St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 08-KA-1156, pp. 3-7, 4/28/09.

Colbert identified the surveillance videotape of the incident, which was played for the jury. In this footage, the suspect's head was cut off from the viewable area. Although a full view of the robber was not recorded, the tape revealed shiny buttons on the robber's jacket. Colbert identified at trial the jacket the defendant was wearing at the time of the robbery.

On January 8, 2005, Tina Bacon was working at the same Westbank Expressway location of Mr. Cash. Shortly after the store opened, a man entered the store, pointed a "large silver gun" at her head, threw a bag on the desk, and demanded money. When Bacon asked him not to hurt her, he told her not to look at him because he would "shoot her in her damn head." She gave him almost $600.00 in cash from the cash drawer. Bacon described the robber who was wearing a baseball hat, a dark jacket, dark pants, tennis shoes, hat, and gold-rimmed glasses.

Detective Gary Barteet of the Westwego Police Department investigated that robbery and determined that the store had been robbed by a middle-aged black man who entered the store brandishing a semi-automatic pistol and robbed the clerk. Detective Barteet and Bacon both were able to identify the video surveillance tape of the January robbery.

During his investigation, Detective Barteet spoke with another Mr. Cash employee, Monique Landry. She was employed at the Tulane Avenue branch of Mr. Cash on December 31, 2004. She received a phone call at the store that morning inquiring about the store's procedures. She described the voice of the caller as an African-American male, with a deep voice that was a little "cracky." The call made her suspicious, because the caller specifically asked if the store gave its loans in cash. Because she was suspicious, Landry wrote down the name and telephone number displayed on the store's Caller ID, which were: "Freddie Carter" and "342-1922." She gave the note that she had written to Detective Barteet.

3

Detective Barteet subpoenaed the telephone company's records for that telephone number. He learned that the bills for that telephone number, in the name of "Freddie Carter," were sent to Rosetta Frazier on Beechgrove Avenue in Westwego. The telephone number was for a land-line in Frazier's apartment. Detective Barteet went to the apartment and met with Ms. Frazier. He learned that Carter was the father of Frazier's children, who was incarcerated at the time of the robbery on December 31, 2004.

Frazier told officers that she knew Mozine Johnson, because he was friendly with her sister, Jacqueline Bourgeois, who is also known as "Betty." Frazier stated that she worked from 7:00 a.m. until 3:00 p.m. on weekdays, so if a call was made from her home telephone number during those hours, it was not made by her. Frazier admitted that her sister frequented her apartment at that time and that Johnson could have been at the apartment with her. When Frazier reviewed telephone logs from her home telephone number, she saw that a call was made at 9:57 a.m., on December 31, 2004.

Based on the information gained from these interviews, Detective Barteet compiled a photographic lineup of suspects that contained Johnson's photograph. When Detective Barteet showed Bacon the photographic lineup on the afternoon of the robbery, she positively identified Johnson as the man that had robbed her at the Westwego Mr. Cash that morning.

After the second armed robbery of the same store, Lieutenant Johnson suspected that the same man had committed both crimes. He also compiled a photographic lineup that contained Johnson's picture. When he showed the lineup to Colbert, she identified Johnson as the man that robbed her at gunpoint on December 31, 2004.

Based on the positive identification of Johnson by the victims, the Westwego Police obtained a warrant for Johnson's arrest. On or about February 10, 2005, officers from the New Orleans Police

Department arrested Johnson in Orleans Parish at 400 North Galvez, Apartment 3, which was Jacqueline "Betty" Bourgeois's apartment.

Detective Todd Rivere, who was with the Westwego Police Department on February 10, 2005, accompanied his partner, Detective Barteet, to conduct a search of that apartment. After advising her of her *Miranda* rights, the two detectives spoke with Bourgeois. She told them that she was the only lessee and only resident of the apartment. She did admit that Johnson frequented her apartment, but denied that he resided with her. Both detectives testified that Bourgeois consented verbally and in writing to a search of her apartment. When the officers searched the apartment, they found men's items in one corner of the bedroom. From that corner, the officers seized, among other things, a man's blue blazer, baseball caps, and eyeglasses.

Johnson was tried before a jury on counts three and four of the amended bill of information on June 11 and 12, 2007, and was found guilty as charged.[5] He was to be tried on the first and second counts on January 24, 2008, and, after denial of the State's request for a continuance, a nolle prosequi was entered as to those two counts.[6]

Thereafter, on July 12, 2007, the Trial Court sentenced Johnson to serve 25 years on each of counts three and four to run concurrently, which included five years on each count as a felony gun enhancement, and with the first 15 years of each sentenced to be served without benefit of parole, probation, or suspension of sentence.

---

[5]St. Rec. Vol. 1 of 6, Trial Minutes, 6/11/07; Trial Minutes, 6/12/07; Jury Verdict (count three, Colbert), 6/12/07; Jury Verdict (count four, Bacon), 6/12/07; Trial Transcript, 6/12/07; St. Rec. Vol. 2 of 6, Trial Transcript, 6/12/07.

[6]St. Rec. Vol. 1 of 6, Minute Entry, 1/24/08; St. Rec. Vol. 2 of 6, Hearing Transcript, 1/24/08.

On August 21, 2007, the State filed a multiple offender bill charging Johnson as a second offender.[7]  After a full hearing, the Trial Court adjudicated Johnson to be a second offender.[8]  The Trial Court resentenced him as a second offender to serve 49 and one-half years with the first 15 years to be served without benefit of parole, probation, or suspension of sentence.[9]  At a hearing held April 15, 2008, the Trial Court clarified the record to reflect that the multiple bill and resentencing applied to the conviction on count three.[10]

On direct appeal, Johnson's appointed counsel argued that the trial court erred in denying the motion to suppress the evidence seized from Bourgeois's apartment.[11]  Johnson filed, pro se, a supplemental brief in which he raised the following assignments of error: (1) he was not given a chance to cross-examine Bourgeois about her consent to the search; (2) his pro se motion for a speedy trial should have been granted; (3) the amendment to the bill of information was defective and he should have been given a continuance to prepare a defense to the amended bill; (4) the Louisiana Constitution provides that a preliminary examination shall not be denied in a felony case except when the person is indicted by a grand jury; and (5) he received ineffective assistance of counsel when counsel admitted that Johnson had previously been in jail for a prior armed robbery conviction.

---

[7]St. Rec. Vol. 1 of 6, Multiple Bill, 8/21/07.

[8]St. Rec. Vol. 1 of 6, Multiple Bill Hearing Minutes, 4/10/08; St. Rec. Vol. 2 of 6, Multiple Bill Hearing Transcript, 4/10/08.

[9]*Id*.

[10]St. Rec. Vol. 1 of 6, Resentencing Minutes, 4/15/08; St. Rec. Vol. 2 of 6, Resentencing Transcript, 4/15/08.

[11]St. Rec. Vol. 2 of 6, Appeal Brief, 08-KA-1156, 11/24/08.

On April 28, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence.[12]   The court found no merit in counsel for Johnson's claim or in his first, second, fourth and fifth *pro se* claims.  As for his third *pro se* claim, the Court found that his failure to object to the amendment of the bill of information precluded relief.  The Court also determined that the sentences imposed by the Trial Court were indeterminate as ordered because the felony gun enhancement and benefit restrictions were not properly applied; the matter was remanded for resentencing.  The Court refused Johnson's *pro se* request for rehearing on May 21, 2009.[13]

On May 27, 2009, Johnson submitted a writ application to the Louisiana Supreme Court raising the five *pro se* claims submitted on direct appeal.[14]   While this writ application was pending, on July 31, 2009, Johnson submitted to the Trial Court a motion for correction of his sentence.[15]   The Trial Court denied the motion on August 7, 2009, noting that the resentencing ordered on appeal by the Louisiana Fifth Circuit was pending.[16]   The Court nevertheless denied the motion finding that his allegations should have been raised before the habitual offender proceeding and/or had been or could have been raised on appeal.

---

[12] *State  v. Johnson*, 9 So.3d at 1084; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 08-KA-1156, 4/28/09.

[13] St. Rec. Vol. 2 of 6, Motion for Rehearing, 5/7/09 (postmarked 5/5/09); Supplement to Rehearing, 5/20/09; 5th Cir. Ruling, 08-KA-1156, 5/21/09.

[14] St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 09-KO-1394, 6/25/09 (dated 5/27/09); St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2009-KO-1394, 6/25/09 (showing postal meter of 6/9/09).

[15] St. Rec. Vol. 4 of 6, Motion to Correct an Illegal Sentence, 8/3/09 (dated 7/31/09).

[16] St. Rec. Vol. 4 of 6, Trial Court Order, 8/7/09.

The Louisiana Fifth Circuit denied relief on Johnson's related writ application and denied his request for rehearing of that order.[17]  The Louisiana Supreme Court also denied Johnson's related writ application without stated reasons on January 28, 2011.[18]

The Trial Court resentenced Johnson on September 4, 2009, to serve 20 years at hard labor on each of counts three and four to run concurrently and to be without benefit of parole, probation or suspension of sentence.[19]  The Court further ordered that an additional five-year felony gun enhancement be added to each count to run consecutive to the underlying 20-year sentence imposed on each count and to be served without benefit of parole, probation or suspension of sentence.  The Court thereafter revoked the sentence on count three and resentenced Johnson as a second offender to serve 49 and one-half years at hard labor to be served concurrently with the sentence on count four and without benefit of parole, probation, or suspension of sentence.  The Court denied Johnson's motion to reconsider the sentence on October 6, 2009.[20]

On September 22, 2009, Johnson submitted a pleading entitled "Petition for Writ of Habeas Corpus" challenging the citation in the amended bill of information to the enhancement statute instead of the armed robbery statute.[21]  By order of October 20, 2009, the trial court denied the

---

[17]St. Rec. Vol. 5 of 6, 5th Cir. Order, 09-KH-725, 10/28/09; 5th Cir. Order, 09-KH-960, 1/8/10; Request for Rehearing, 09-960, 11/13/09 (postmark 11/6/09, dated 11/5/09).

[18]*State ex rel. Johnson v. State*, 56 So.3d 970 (La. 2011); St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 10-KH-215, 1/26/10 (postal meter 1/14/10); St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2010-KH-215, 1/26/10 (showing postal meter 1/14/10).

[19]St. Rec. Vol. 4 of 6, Resentencing Minutes, 9/4/09.

[20]St. Rec. Vol. 4 of 6, Motion for Reconsideration of Sentence, dated 9/14/09; Trial Court Order, 10/6/09.

[21]St. Rec. Vol. 4 of 6, Petition for Writ of Habeas Corpus, 9/30/09 (dated 9/22/09).

motion finding it to be an attempt to file a procedurally improper application for post-conviction relief.[22]  The Court also denied Johnson's request for rehearing.[23]

The Louisiana Fifth Circuit, on January 19, 2010, denied relief on Johnson's related writ application, finding the application to be repetitive and otherwise procedurally defective and the claims procedurally barred from review.[24]  Johnson did not seek further review of this ruling.

On February 26, 2010, the Louisiana Supreme Court denied without stated reasons Johnson's 2009 writ application seeking review of his direct appeal.[25]  Johnson's conviction became final 90 days later, on May 27, 2010, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

Prior to that date, on April 7, 2010, Johnson filed with the Trial Court a motion seeking to quash the prior criminal proceedings claiming that the State did not properly bill him on the correct charges.[26]  The Trial Court denied the motion on April 30, 2010, finding the motion untimely and

---

[22]St. Rec. Vol. 4 of 6, Trial Court Order, 10/20/09.

[23]St. Rec. Vol. 4 of 6, Trial Court Order, 11/20/09.

[24]St. Rec. Vol. 4 of 6, 5th Cir. Order, 09-KH-1090, 1/19/10.

[25]*State v. Johnson*, 28 So.3d 268 (La. 2010); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2009-KO-1394, 2/26/10.

[26]St. Rec. Vol. 4 of 6, Motion to Quash, 4/7/10.

therefore waived.[27]  The Louisiana Fifth Circuit also denied relief on his related writ application on June 29, 2010.[28]  The Louisiana Supreme Court denied Johnson's writ application to that Court without stated reasons on August 19, 2011.[29]

Johnson submitted an application for post-conviction relief to the Trial Court on June 16, 2010, in which he raised 10 grounds for relief:[30] (1) denial of the motion to suppress identification, evidence and statements; (2) ineffective assistance of trial counsel when he mentioned Johnson's prior conviction during cross-examination of Detective Barteet and during closing arguments; (3) ineffective assistance of appellate counsel for only raising one issue; (4) the State violated his rights during closing arguments in arguing that Johnson needed to testify; (5) invalid consent to search form and illegal search; (6) defective bill of information when it was amended to include the wrong statute; (7) violation of the right to speedy trial; (8) double jeopardy; (9) defective jury instructions and improper verdict; and (10) invalid multiple bill information sheet.

After receipt of briefs from the parties,[31] on September 23, 2010, the Trial Court denied relief finding that claims one, two, five, six, and seven had been raised on direct appeal and were barred from further review under La. Code Crim. P. art. 930.4(C).[32]  The Court further found that claims

---

[27]St. Rec. Vol. 4 of 6, Trial Court Order, 4/30/10.

[28]St. Rec. Vol. 4 of 6, 5th Cir. Order, 10-KH-467, 6/29/10.

[29]*State ex rel. Johnson v. State*, 67 So.3d 1238 (La. 2011); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2010-KH-1615, 8/19/11; La. S. Ct. Writ Application, 10-KH-1615, 7/12/10; St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2010-KH-1615, 7/12/10 (showing postmark of 7/7/10).

[30]St. Rec. Vol. 4 of 6, Uniform Application for Post-Conviction Relief, 6/22/10 (dated 6/20/10); Memorandum in Support, 6/16/10; *see also*, Trial Court Order, 6/23/10; Trial Court Order, 7/6/10.

[31]St. Rec. Vol. 4 of 6, Trial Court Order, 7/6/10; St. Rec. Vol. 5 of 6, State's Response, 7/27/10; Traverse, 8/6/10.

[32]St. Rec. Vol. 5 of 6, Trial Court Order, 9/23/10.

four, eight, nine, and ten could have been raised on appeal and also were barred from review under La. Code Crim. P. art. 930.4.  The Court further resolved that the tenth claim was also barred from review under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).  The Court also held that Johnson's third claim, raising ineffective assistance of appellate counsel, was without merit.

The Louisiana Fifth Circuit denied Johnson's related writ application on December 3, 2010, finding no error in the Trial Court's ruling.[33]  The Louisiana Supreme Court also denied Johnson's writ application to that Court without stated reasons on January 13, 2012.[34]

On December 22, 2010, Johnson filed a motion for arrest of judgment challenging the amendment of the bill of information which he claims led to an invalid verdict.[35]  On January 5, 2011, the Trial Court denied the motion as improperly seeking post-conviction relief and finding such an application for post-conviction relief to be procedurally barred under La. Code Crim. P. art. 930.4(B), (C), (D), and (E) and *State v. Gaines*, 701 So.2d 688 (La. App. 4th Cir. 1997).

The Louisiana Fifth Circuit denied Johnson's writ application on March 24, 2011, finding it to be repetitive of an application previously denied on December 3, 2010.[36]  He did not seek further review of this order.

---

[33]St. Rec. Vol. 5 of 6, 5th Cir. Order, 10-KH-910, 12/3/10.  The record does not contain a copy of the writ application.

[34]*State ex rel. Johnson v. State*, 77 So.3d 960 (La. 2012); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2010-KH-2802, 1/13/12; La. S. Ct. Writ Application, 10-KH-2802, 12/21/10; St. Rec. Vol. 5 of 6, La. S. Ct. Letter, 2010-KH-2802, 12/21/10 (showing no postmark).

[35]St. Rec. Vol. 5 of 6, Motion for Arrest of Judgment, 12/22/10.

[36]St. Rec. Vol. 5 of 6, 5th Cir. Order, 11-KH-127, 3/24/11; 5th Cir. Writ Application, 11-KH-127, 2/9/11 (postmarked 2/2/11).

In the meantime, on February 22, 2011, Johnson filed a motion with the Trial Court to correct his illegal sentence for exceeding the statutory maximum.[37]   The Trial Court denied the motion on March 24, 2011, as meritless.[38]

Johnson's related writ application to the Louisiana Fifth Circuit was denied on June 16, 2011, finding no error in the Trial Court's ruling.[39]   The Louisiana Supreme Court also denied Johnson's related writ application on March 30, 2012, on procedural grounds, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, 665 So.2d at 1172.[40]

Johnson filed another application for post-conviction relief with the Trial Court on October 13, 2011, alleging that his attorney had a conflict of interest because he was employed by the City of Gretna in Jefferson Parish where he was tried.[41]   After receiving briefing from the State and Johnson,[42] the Court denied the application on January 27, 2012, finding the application to be repetitive and barred from review under La. Code Crim. P. art. 930.4, and alternatively as meritless.[43]

---

[37]St. Rec. Vol. 5 of 6, Motion to Correct an Illegal Sentence, 2/22/11.

[38]St. Rec. Vol. 5 of 6, Trial Court Order, 3/24/11.

[39]Rec. Doc. No. 7, p. 4.  Although referenced in its response, the State failed to provide a copy of Writ No. 11-513 or the Court's order.

[40]*State ex rel. Johnson v. State*, __ So.3d __, 2012 WL 1222590 (La. Mar. 30, 2012).  Although referenced in its response, the State failed to provide a copy of Writ No. 2011-KH-1444 or the Court's order.

[41]St. Rec. Vol. 5 of 6, Trial Court Order, 1/27/12.  The record also does not contain a copy of this application.

[42]St. Rec. Vol. 5 of 6, State's Response, 12/1/11; Traverse, 12/12/11.

[43]St. Rec. Vol. 5 of 6, Trial Court Order, 1/27/12.

II.   **Federal Petition**

On April 18, 2012, the clerk of this Court filed Johnson's federal petition for habeas corpus relief in which he raised six grounds for relief:[44] (1) illegal search and error in the denial of the motion to suppress; (2) ineffective assistance of counsel when counsel (a) allowed the suppression hearing to take place without the victims present, (b) failed to object to hearsay at the suppression hearing, (c) failed to investigate or interview witnesses, and (d) mentioning Johnson's prior conviction before the jury during cross-examination and closing arguments; (3) defective bill of information where the State amended the statutory reference to the charge before trial to reference the firearm enhancement not armed robbery; (4) defective jury instructions and improper verdict where the Trial Court erred in instructing the jury on the responsive verdicts; (5) invalid multiple bill information sheet had the wrong docket number for his prior conviction; and (6) double jeopardy because he was sentenced twice under the same statute.

The State filed a response in opposition to Johnson's petition conceding its timeliness and exhaustion.[45]  The State argues that claim one, addressing the motion to suppress, is barred from federal review by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976).  The State further argues that claims one (motion to suppress), three (defective bill), four (defective jury instructions and verdict), five (invalid multiple bill information sheet), and six (double jeopardy) are procedurally barred from review because relief was denied by the state courts under La. Code Crim. P. art. 930.4 which prohibits post-conviction review of repetitive applications and claims already reviewed on direct appeal or which were not raised on direct appeal but could have been.  With respect to claim two,

---

[44]Rec. Doc. No. 1.

[45]Rec. Doc. No. 7.

ineffective assistance of counsel, the State argues that Johnson is not entitled to relief under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[46] applies to this petition, which is deemed filed in this Court no later than March 4, 2012.[47]   The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State cursorily suggests in a footnote without analysis that Johnson's claims were exhausted through the filing of Louisiana Supreme Court Writ No. 10-KH-2802.[48]   However, a simple reading of the claims raised in that writ application, and in the lower courts before, clearly

---

[46]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).   The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.   Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[47]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.   Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).   The clerk of court filed Johnson's federal habeas petition on April 18, 2012, when the filing fee was received after denial of his pauper application.   Johnson signed the form petition on March 4, 2012.   This is the earliest date in the record on which he could have delivered the pleadings to prison officials for mailing.   The fact that he later paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition.   *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

[48]Rec. Doc. No. 7, p.4 n.2.

indicates that Johnson did <u>not</u> raise three of his ineffective assistance of counsel grounds to <u>any</u> state court.  This will be discussed in more detail later in this report.

In addition, the State incorrectly argues that several of Johnson's claims are procedurally barred from federal review because the state courts imposed a bar to review on post-conviction pursuant to La. Code Crim. P. art. 930.4(A), which precludes post-conviction review of claims already considered on direct appeal.  As will be discussed later in this report, it is a fundamental premise, which should be well known to the State, that Article 930.4(A) as applied to claims already considered on direct appeal does <u>not</u> bar federal review.

Before proceeding to the substance of his claims, the Court will address exhaustion *sua sponte* and the State's procedural defenses.

## IV.    The Exhaustion Doctrine

In its opposition response, the State mentions in a footnote that Johnson satisfied exhaustion, because he presented his claims to the Louisiana Supreme Court.[49]  This is not factually supported by the record.  As mentioned above, a reading of the petition and the record below clearly shows that Johnson did not raise the first three grounds of his ineffective assistance of counsel claim to that court, or <u>any</u> state court.  The Court finds that this error is based on the State's failure to properly review the record in accordance with federal habeas law, and demonstrates a clear misunderstanding of the exhaustion doctrine and an unfamiliarity with federal standards of habeas corpus review. *Accord Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)).  As will be discussed later, exhaustion requires presentation of each claim

---

[49]Rec. Doc. No. 7, p.4 n.2.

and legal theory through each required level of state court review. Johnson did not do this as to all grounds in support of his ineffective assistance of counsel claim.

The Court finds that the State inadvertently erred in resolving that Johnson exhausted state court remedies, and this error does not constitute a valid or express waiver of exhaustion. The Court therefore will raise Johnson's failure to exhaust *sua sponte*. *McGee v. Estelle*, 722 F. 2d 1206, 1214 (5th Cir. 1984) (*en banc*); *see also*, 28 U.S.C. § 2254(b)(3) (the State's failure to raise exhaustion is not a waiver of the defense).

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of exhaustion and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the

State's ordinary appellate review procedures.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it

is to satisfy the 'fairly presented' requirement."  *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S.

at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new

factual claims in his federal application."  *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at

420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the

lower state courts if the claims were not specifically presented to the state's highest court.  *Baldwin*

*v. Reese*, 541 U.S. 27, 32 (2004).  Furthermore, a prisoner does not fairly present a claim to the

state's highest court if that court must read beyond the petition or brief, such as a lower court

opinion, to find a claim not otherwise specifically raised.  *Id*. at 32.

As mentioned above, Johnson has not raised three of his ineffective assistance of counsel

grounds to any state court.  Specifically, Johnson has not raised to any state court his arguments that

he was denied effective assistance of counsel when counsel allowed the suppression hearing to

proceed without the victims present, failed to object to the hearsay at the suppression hearing, and

failed to investigate or interview witnesses.[50]  In fact, a proper reading of the record shows that

Johnson only argued two grounds to the state courts, that his counsel was ineffective for mentioning

his prior conviction during cross-examination and during closing arguments, and in a later post-

conviction motion, that counsel had a conflict of interest arising from his employment with the City

of Gretna.

---

[50]The Court notes that Johnson used similar arguments on state post-conviction in discussing the unfairness of the proceedings against him but <u>not</u> in the context of ineffective assistance of counsel.

Under the plain language of the applicable law, Johnson has <u>not</u> exhausted available state court remedies on each ground in support of his ineffective assistance of counsel claim.  He did not raise these arguments in his *pro se* supplemental appellate brief or on state post-conviction review. When ineffective assistance of counsel is raised in the state courts, the claim is not exhausted where the petitioner did not raise or mention the same basis in the state court proceedings that are asserted in a federal petition.  *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."; *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983) (factual bases underlying the ineffective assistance of counsel claim were "significantly different" from those raised in state court, and therefore, were not exhausted).

The record discloses no good cause for Johnson's failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  He instead presents these three grounds for the first time to this court.  The grounds clearly are unexhausted.

Normally, the Court would recommend that Johnson's petition be dismissed without prejudice to allow him to pursue exhaustion of his claim in the appropriate state courts.  However, unexhausted claims, those claims which were not "fairly presented" to the state courts, may be considered "technically" exhausted if the habeas petitioner is now prohibited from litigating those claims in the state courts because of some procedural rule.  If that is so, then those "technically" exhausted habeas claims might be considered procedurally defaulted.

If a claim has not been adjudicated on the merits in state court, federal review of that claim may be barred by the doctrine of procedural default if the petitioner has failed to meet state

procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance. *See Cone v. Bell*, 556 U.S. 449, 465 (2009) (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman v. Thompson*, 501 U.S. 722, 732 (1991)). When state court remedies are rendered unavailable by the petitioner's own procedural default, federal courts are normally barred from reviewing those claims. *See Coleman*, 501 U.S. at 722. "[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, . . . [then] there is a procedural default for purposes of federal habeas. . ." *Id.*, at 735 n.1.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and thereafter would be barred from seeking relief in those courts. *Magouirk*, 144 F.3d at 358 (citing *Coleman*, 501 U.S. at 731-33 and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995)); *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir. 1998). In such a case, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted and may be dismissed. *Id.*

In this case, it is reasonable to conclude that Johnson is now unable to litigate his remaining ineffective assistance of counsel claim in the Louisiana courts. Based on the record and the fact that Johnson already has had numerous post-conviction applications in the state courts some of which

already have been rejected as repetitive, any attempt to litigate these claims now would likely be dismissed as repetitive under La. Code Crim. P. art. 930.4(D) or (E)[51] or as time-barred by the provisions of La. Code Crim. P. art. 930.8.[52]  Therefore, the new grounds of ineffective assistance of counsel are now considered procedurally defaulted.  *Sones*, 61 F.3d at 416 (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993)).  The procedural default doctrine bars federal habeas corpus review if the state courts would now refuse to address a habeas petitioner's unexhausted federal claims, because litigation of those claims would be barred by state procedural rules.

Federal habeas review of a "technically" exhausted and now procedurally defaulted claim is barred ". . . unless the prisoner can demonstrate cause for the default and actual prejudice as result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750-51.  In this case, Johnson has other claims which are also in procedural default, because they were denied on state procedural grounds.  Rather than be repetitive of the procedural default analysis, the Court will consider the standards of review for the procedural default of all of the claims in the next section of this report.

## V.   **Procedural Default**

In addition to the three technically exhausted ineffective assistance of counsel grounds,[53] the State has argued that Johnson's claim numbers one, three, four, five, and six, are in procedural

---

[51]Art. 930.4(D) provides that "[a] successive application may be dismissed if it fails to raise a new or different claim."  Art. 930.4(E) also provides "[a] successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

[52]Art. 930.8 provides a two-year period of limitations for filing applications for post-conviction relief and that period generally runs from the date that the applicant's judgment of conviction becomes final under Louisiana law, which for Johnson was in March of 2010 under Louisiana law.

[53]The Court has determined these ineffective assistance of counsel claims to be in procedural default as a result of his technical exhaustion in light of his inability to return to the State courts to exhaust.

default having been dismissed on post-conviction review as repetitive under La. Code Crim. P. art. 930.4(A) or (C).

A brief rehashing of the procedural history is important here. Three of the claims before this Court were first raised by Johnson on direct appeal to the Louisiana Fifth Circuit: (1) the Trial Court erred in the denial of the motion to suppress; (2) ineffective assistance of counsel when counsel mentioned Johnson's prior conviction before the jury during cross-examination and closing arguments; and (3) defective bill of information where the State amended the statutory reference to the charge before trial to reference the firearm enhancement not armed robbery. The Louisiana Fifth Circuit denied relief on the first two claims as meritless.

For the third claim, the Court denied relief finding that, under La. Code Crim. P. art. 841(A), the lack of a contemporaneous objection failed to preserve the claim for appeal. This was the last reasoned decision, since the Louisiana Supreme Court denied Johnson's subsequent writ application without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

As also outlined above, on September 23, 2010, the state trial court denied relief on Johnson's post-conviction application in which he raised 10 claims, including six of the claims presently before this Court.[54] Specifically, with focus on the claims presented here, the Trial Court held that the following claims were barred from <u>further</u> review under La. Code Crim. P. art.

---

[54]As outlined previously, Johnson raised the same or some similar arguments in other later-filed motions which were rejected by the state courts on procedural grounds, including repetitiveness.

930.4(A),[55] because they had been fully addressed on appeal: (1) error in the denial of the motions to suppress identification, evidence and statements; (2)(d) ineffective assistance of trial counsel when he mentioned Johnson's prior conviction during cross-examination of Detective Barteet and during closing arguments; and (3) defective bill of information when it was amended to include the wrong statute.

Citing La. Code Crim. P. art. 930.4(C), the Trial Court also procedurally barred review of other of Johnson's post-conviction claims, including the following claims also raised here, because Johnson failed to raise them on appeal when they could have been so raised: (4) defective jury instructions and improper verdict; (5) invalid multiple bill information sheet; and (6) double jeopardy. The state court also alternatively denied relief on the fifth claim, invalid multiple bill information sheet, pursuant to La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* which bar review of sentencing matters on post-conviction. These rulings were affirmed through the denial of relief by the Louisiana Fifth Circuit and the Louisiana Supreme Court.[56] *Ylst*.

The Court is compelled to first note that the State's reliance on La. Code Crim. P. art. 930.4(A) as a bar to federal review is improper in this case and must be rejected. Under La. Code Crim. P. art. 930.4(A), the state courts can bar review of repetitive matters already raised and addressed on direct appeal. The bar under this provision is not a typical procedural bar; instead, it prevents <u>further</u> review of a claim already addressed on appeal. *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994). For this reason, the bar imposed on post-conviction review does not affect a

---

[55]The Court notes that the Trial Court improperly cited to Art. 930.4(C) instead of Art. 930.4(A).

[56]The Court notes that Johnson did not raise the denial of the motion to suppress claim in the review sought after the Trial Court's denial of this post-conviction application.

federal habeas court's review.  Instead, the federal court is to assess the underlying basis for the denial of relief that was given by the state courts on direct appeal.

As detailed above, on direct appeal, two of the repetitive claims were addressed on the merits and one of the claims was barred from review for lack of a contemporaneous objection under La. Code Crim. P. art. 841(A).  This article itself is a procedural bar that will be addressed later in this report.  The State's reliance, however, on a bar to review in this case under La. Code Crim. P. art. 930.4(A) is rejected.

With regard to the remaining procedural bars under La. Code Crim. P. art. 841(A) and 930.4(C) relied on by the state courts, a federal court generally will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman*, 501 U.S. at 731-32; *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32, *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

A.      **Independent and Adequate State Grounds**

The Court must consider whether the bars to review relied upon by the Louisiana courts prohibit consideration of the claims on federal habeas corpus review.  For a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

1.      **Relative to the Three Grounds in Support of the Ineffective Assistance of Counsel Claim**

As discussed above, the Court has found that in three of Johnson's grounds in support of his ineffective assistance of counsel claim, counsel allowed the suppression hearing to proceed without the victims present, failed to object to the hearsay at the suppression hearing, and failed to investigate or interview witnesses, are in procedural default.  Under the doctrine of technical exhaustion as a procedural default, when a petitioner fails to properly raise his federal claims in state court, as Johnson has done here, he deprives the State of "an opportunity to address those claims in the first instance" and frustrates the State's ability to honor his constitutional rights.  *Coleman*, 501 U.S. at 732, 748.  Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.  *See Id*., at 731.

2.      **Independent and Adequate State Grounds relative to Johnson's Other Procedurally Defaulted Claims**

The Court next considers the procedural default of Johnson's claims of a defective bill of information (claim three), defective jury instructions and improper verdict (claim four), invalid

multiple bill information sheet (claim five), and double jeopardy (claim six) based on the state courts' reliance on Louisiana procedural rules to deny relief.

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338.  In addition, it also is well settled that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  The Court here needs only to consider the state courts' procedural basis for denial of relief.

The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, __U.S.__, 130 S. Ct. 612, 617 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, __U.S.__, 131 S.Ct. 1120, 1127 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 130 S. Ct. at 618.

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999).  Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding

fundamentally unfair.  *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar.  *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied).  However, where such a basis exists in state law, as it does in this case, the bar must stand.

In this case, the Louisiana courts denied relief on Johnson's claim of a defective bill of information finding that the lack of a contemporaneous objection under Louisiana law barred review of the claim on appeal.  Louisiana law, specifically La. Code Crim. P. art. 841(A) relied on by the state courts, provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  It is well settled that the "contemporaneous objection" rule

is an "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).  The reasons for the state courts' dismissal of Johnson's claims, therefore, were independent of federal law and relied strictly on state procedural requirements.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The failure to preserve a claim under La. Code Crim. P. art. 841 also is an adequate state grounds which bars review by the federal courts in a habeas corpus proceeding.  *See*, *Toney v. Cain*, 24 F.3d 240, 1994 WL243453, at *2 (5th Cir. May 20, 1994) (Table, Text in Westlaw); *Proctor v. Butler*, 831 F.2d 1251, 1253 (5th Cir. 1987); *Riggins v. Butler*, 705 F. Supp. 1205, 1208 (E.D. La. 1989); *Marshall v. Cain*, No. 04-219, 2006 WL 2414073, at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation); *accord*, *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright*, 433 U.S. at 87-88 (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claims)).  The procedural bar under La. Code Crim. P. art. 841 is also adequate in this case.

As noted above, the state trial court denied three of Johnson's claims, defective jury instructions and improper verdict (claim four), invalid multiple bill information sheet (claim five), and double jeopardy (claim six), pursuant to La. Code Crim. P. art. 930.4(C) for failure to raise the claims on direct appeal.  The record supports the imposition of this procedural bar, since neither Johnson nor his appellate counsel raised these claims on direct appeal.  The record reflects that Johnson filed pro se a supplemental appeal brief and did not raise these claims.

The bar imposed under Article 930.4(C) is adequate to foreclose federal review of a claim barred thereunder by the state courts.  *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at *8

(E.D. La. Oct. 17, 2006) (Report and Recommendation), *adopted as modified on other grounds*, *Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

The Court also notes that the Trial Court alternatively barred the claim of an invalid multiple bill information sheet under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, which prohibit post-conviction review of sentencing errors, including habitual offender proceedings, on post-conviction review.  *See also*, *State v. Cotton*, 45 So.3d 1030 (La. 2010); *State v. Thomas*, 19 So.3d 466 (La. 2009).

The bar was therefore based solely in state law and independent of any federal claim.  In addition, the federal courts have repeatedly held that the La. Code Crim. P. art. 930.3 and its progeny are both independent and adequate state law grounds for dismissal which bar review of similar claims by the federal courts in a habeas corpus proceeding.  *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Art. 930.3, *State ex rel. Melinie*) (Table, Text in Westlaw); *Taylor v. Cain*, No. 07-3929, 2008 WL 4186883, at *16 (E.D. La. Sep. 10, 2008); *Williams v. Cain*, No. 05-0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008); *Madina v. Cain*, No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sep. 20, 2006); *Johnson v. Andrews*, No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); *Williams v. Miller*, No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. Jul. 24, 2006); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. Jun. 30, 2005); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123, at *7 (E.D. La. Apr. 4, 2001) (Schwartz, J.); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820, at *3-4 (E.D. La. Jul. 31, 2000); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497, at *3-4 (E.D. La. Oct. 29, 1999).

For the foregoing reasons, the bars imposed upon Johnson's claims defective bill of information (claim three), defective jury instructions and improper verdict (claim four), invalid multiple bill information sheet (claim five), and double jeopardy (claim six), are supported by the record and adequate to foreclose review by this federal court.

Because the Louisiana courts' decisions rested on an independent and adequate state rules of procedural default, this court will not review Johnson's barred claims.

### B.      Cause and Prejudice

Whether technically or actually in procedural default, a federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, Johnson has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts or as a result of his failure to exhaust. The Court's review of the record does not support a finding that any factor external to the defense prevented Johnson from raising the claims in a procedurally proper manner. The record also does not reflect

any action or inaction on the part of the State which prevented him from doing so.  In addition, neither pro se status nor ignorance of the law is sufficient cause to excuse a procedural default.  *See Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Johnson's defaulted claims, ineffective assistance of counsel for allowing the suppression hearing to proceed without the victims present, failing to object to the hearsay at the suppression hearing, and failing to investigate or interview witnesses (claim two, parts a, b, and c), defective bill of information (claim three), defective jury instructions and improper verdict (claim four), invalid multiple bill information sheet (claim five), and double jeopardy (claim six), are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[57]

---

[57]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte.  *Id.*

### C.   Fundamental Miscarriage of Justice

Johnson may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Johnson does not present any claim and the record contains nothing that suggests his actual innocence on the underlying convictions.  His claims address alleged procedural failings in the state criminal proceedings and not his actual innocence.  He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default.  He, therefore, has failed to overcome the procedural bar to his claims.  The claims are procedurally barred and should be dismissed with prejudice for that reason.

### VI.   Standards of Review on the Merits of the Remaining Claims

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2)

extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VII.   Denial of Motion to Suppress

Johnson alleges that the Jefferson Parish officers performed an illegal search of his apartment in Orleans Parish while he was in custody.  He claims that the State produced a consent form signed by the apartment's tenant, Jacqueline Bourgeois, but he did not have a chance to cross-examiner her at the suppression hearing.

The Trial Court held a full hearing on the defendant's motion to suppress on April 13, 2007.[58] After hearing testimony from the detectives and the argument of counsel, the Trial Court denied the motions to suppress the evidence, the identification, and the statements.[59]

Johnson's appointed counsel also challenged the denial of the motion to suppress the evidence on direct appeal.[60]  He argued that his jacket was improperly seized from Ms. Bourgeois's apartment since, while she may have, he did not consent to search of the home, in violation of the Fourth Amendment.  He also argued that the Westwego police officers prevented him from objecting to the search by having him arrested before they went there to conduct the search.

The Louisiana Fifth Circuit found that the warrantless search was done of Bourgeois's apartment at which Johnson was only an occasional visitor and that the search was properly conducted with Bourgeois's oral and written consent.  This was the last reasoned opinion on this issue, because the Louisiana Supreme Court denied the subsequent writ application without stated reasons.  *Ylst*, 501 U.S. at 802.

---

[58]St. Rec. Vol. 1 of 6, Motion Hearing Minutes, 4/13/07; Motion Hearing Transcript, 4/13/07.

[59]*Id.*

[60]St. Rec. Vol. 2 of 6, Appeal Brief, 08-KA-1156, 11/24/08.

Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted) *Id*., 428 U.S. at 494. A "full and fair" hearing as contemplated by *Stone v. Powell* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, at 1192.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply. *Id*. at 320. The Fifth Circuit also has held that the *Stone v. Powell* bar applies despite an error by the state court in

deciding the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also*, *Janecka*, 301 F.3d at 321 (same). Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis*, 803 F.2d at 1372.

Johnson does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims, and as is shown in the record, he received appropriate review in the state courts. Moreover, "[I]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and Recommendation).

In this case, Johnson raised his Fourth Amendment claims in the pretrial motion to suppress and on direct appeal. As outlined above, the state trial court denied the motion to suppress finding that the evidence was properly seized under the circumstances. The Louisiana Fifth Circuit also

denied his claim on direct appeal, as did the Louisiana Supreme Court in his subsequent writ application.

The record, therefore, demonstrates that Johnson was provided with ample opportunity to and did present his Fourth Amendment claim, although his efforts were unsuccessful. After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims." *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quotations and citation omitted). Each of the state courts considered and reviewed his arguments finding them to be without merit. The fact that petitioner may disagree with the state courts' decision to deny relief is not sufficient to overcome the bar in *Stone v. Powell* to federal habeas corpus review. *Janecka*, 301 F.3d at 320-21. The review at all levels of the state courts was sufficient to meet due process requirements.

Johnson is not entitled to federal habeas court review of his Fourth Amendment claims. Because he received and exercised the opportunity for a full and fair hearing in the state courts, *Stone v. Powell* bars consideration of his Fourth Amendment claim here.

## VIII.   Ineffective Assistance of Counsel

Johnson alleges that his trial counsel provided ineffective assistance when he mentioned his prior armed robbery conviction in front of the jury while he was cross-examining a state witness and again during his closing arguments. As noted above, he raised this claim *pro se* on direct appeal to the Louisiana Fifth Circuit.

Relying on the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state law, the Court denied relief on this claim. The Court first determined that Johnson

failed to prove and the record did not show that his counsel mentioned the 1973 conviction for armed robbery in closing arguments. The Court declined to find that this claim had a factual basis in the record. The Court also found where counsel asked one of the officers if he was aware that Johnson had a prior conviction for armed robbery. The officer denied knowledge of that conviction. The Court went on to resolve that such a comment was likely to have been a strategic trial decision by counsel. This was the last reasoned decision on the issue.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). The question is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466

U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "'a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional

issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

(citations and quotation marks omitted) *Harrington*, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 556 U.S. at 121 n.2).

Under a broad reading, Johnson alleges that his trial counsel referenced prejudicial information, the 1973 prior conviction for armed robbery. As found by the state court, Johnson has not provided any proof that his counsel referenced the conviction during closing arguments. That is, by this Court's reading, the closing arguments were not transcribed, so his factual allegations

were not proven.  As determined by the Louisiana Fifth Circuit, the record did indicate that counsel mentioned the prior conviction while cross-examining Detective Barteet during trial.

A reading of the trial transcript reflects that counsel focused the cross-examination of Barteet on the reliability of his investigation leading to Johnson as a suspect.[61]   Barteet testified that, initially, the only description he had was that the perpetrator was a black male with no other details.[62]   In an apparent effort to question how Johnson even became a suspect, counsel asked Barteet about obtaining Johnson's rap sheet.[63]   Counsel had Barteet confirm that before he even met Johnson or interviewed the victim, he knew Johnson had a criminal record.[64]   Counsel also asked if the criminal history also showed the 1973 conviction for armed robbery.  Barteet responded that the rap sheet he had did not show that conviction because of its age.  He also denied knowing about the prior conviction until later.

Counsel continued to question Barteet about Bacon's inability to provide more than a general description of a middle-aged black man as the perpetrator.[65]   Counsel even had Barteet concede that Bacon was not given an opportunity to select Johnson from a physical line-up or compare his stature to that of other people.[66]

A reading of the entire record reflects that counsel pursued questioning of Barteet in an effort to raise questions about how Johnson became a suspect based simply on the general description

---

[61]St. Rec. Vol. 2 of 6, Trial Transcript, p. 25, 6/12/07.

[62]*Id*.

[63]*Id*.

[64]*Id*., p. 26.

[65]*Id*., pp. 29-30.

[66]*Id*., pp. 30-31.

given by the victim.  He also attempted to cast doubt on the reliability of the identification made by Bacon.  The reference to the 1973 conviction in Johnson criminal history records was made in an effort to suggest that Johnson was pursued simply because of his past record.

The reference was part of counsel's strategic presentation of the case.  Furthermore, the reference had no apparent prejudicial effect on the verdict in light of the overwhelming evidence of Johnson's guilt, including the eyewitness identifications, the evidence seized from Bourgeois's apartment, and Johnson's own comments to police.

As determined by the state courts, Johnson has not shown that counsel's trial decisions regarding the questioning of Detective Barteet or the reference to his criminal record during cross-examination, or even in closing arguments, were outside of reasonable and sound trial strategy under the circumstances of his case.  The state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law.  Johnson is not entitled to relief on this claim.

## IX.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Mozine Johnson's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[67]

New Orleans, Louisiana, this 20th day of July, 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[67]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

43